NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 25, 2013[*]
Decided October 25, 2013

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-1828

| | |
|---|---|
| LAWRENCE B. SMIZER, | Appeal from the United States District |
| *Plaintiff–Appellant,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 10 C 4304 |
| COMMUNITY MENNONITE EARLY LEARNING CENTER, | John Z. Lee, |
| *Defendant–Appellee.* | *Judge.* |

## O R D E R

Lawrence Smizer was fired from his job as a teacher's aide at the Community Mennonite Early Learning Center. The reason, he believes, is that the Center's director—his mother—was reacting to statements from potential clients who had decided against placing their daughters at the daycare when they realized that a male staff member would be attending their toddlers. The Center, in contrast, says that the

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

plaintiff was fired because he brought a family squabble into the workplace. The plaintiff sued the Center under Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e-2(a)(1), and also included in his complaint a state-law claim for defamation. The district court granted summary judgment for the Center on the Title VII claim and then declined to exercise jurisdiction over the defamation claim. We conclude that a jury could not side with the plaintiff based on the evidence presented at summary judgment, and thus we affirm the judgment.

The Center is church-affiliated and offers daycare for newborns through age five. It also has a kindergarten program. The plaintiff was hired in 1993 as a teacher's aide. When he lost his job in April 2010, he was assigned to a classroom where he supervised two-year-old children. At that time only one of his coworkers, a cook, was male. As of November 2011 the Center had 19 employees, and its website states that currently it is licensed to serve 210 children. The Center has not suggested that sex could be a bona fide occupational qualification for a teacher's aide working with very young children. *See* 42 U.S.C. § 2000e-2(e)(1).

Before he was fired, the plaintiff's annual performance evaluations all had been satisfactory, including the last in November 2009. The only reprimand documented in his employment file was for wearing open-toed shoes on April 5, 2010. The plaintiff does not dispute, however, that a family quarrel involving custody of his teenage nephew had been brewing for several years before he was fired. The nephew was not living at home, and the plaintiff had supported his sister's effort to regain custody of her son. The plaintiff's mother, Jackie Smizer, opposed that outcome, as did his grandmother, Rosemary Wooley, a volunteer at the Center. On April 8, 2010, a state judge awarded custody to the boy's mother, and that night a former Center employee, Lynetta Hall, sent an e-mail to the plaintiff's nephew with this message:

> <u>Lawrence Dontyoujudgeme Smizer</u> To all my family that fought my sister tooth and nail over some BULLSHIT (And you know who you are) FUCK YOU BITCHES!!!! HE IS GOING HOME WHERE HE BELONGS!!!!! HAHAHAHAHAHAHAHAHAHAHAHAHAHAHAHAHAAHAHHAHAH HAAH

The next morning, Jackie Smizer sent an e-mail to Michael Devine, the chairman of the Center's board of directors, asserting that the plaintiff had posted on Facebook "about his damned family & that's what we get for f***ing with his sister and other horrible

stuff." Jackie expressed concern that other employees would have seen the alleged post, and she added that "Lynetta even sent it" to her grandson, who had opposed being returned to his mother.

Three days later, Jackie wrote a memo to Devine explaining that she and Wooley, the plaintiff's grandmother, no longer felt safe in the plaintiff's presence. She asked that he be fired for "creating a hostile work environment" and for "pulling staff into this family drama." Jackie asserted that her grandson had telephoned her, upset, after receiving the e-mail sent by Lynetta Hall. The plaintiff, she continued, had "never been the ideal employee," though as his mother she had been unwilling to see anything but good. But now, Jackie said, she had "set about gathering the evidence to dismiss him." The plaintiff, she reported, "came in late, left early, used center equipment and computers without permission and reportedly slept on the job." And, she added, the plaintiff had grown "defiant" in the previous six months, and while at the Center had "got into an argument" with Wooley prompting another employee to intervene "to make sure that Larry didn't hit his 78 year old grandmother."

On April 15, 2010, Devine hand-delivered to the plaintiff a two-line letter informing him that he was fired "for insubordination and unprofessional conduct." Devine told the plaintiff that "the Facebook posting" was the basis for his dismissal.

In his complaint the plaintiff alleged that, in the two weeks after he was reprimanded, four women wore open-toed shoes but were not disciplined. He also alleged that, while he was on vacation in December 2009, Chairman Devine reportedly had found pornography on a shared computer at the Center, and Jackie Smizer had accused the plaintiff of downloading the files because, she said, "Women don't like porn." This is the extent of his explanation for suspecting sex discrimination; the rest of his complaint concerned the defamation claim.

In moving for summary judgment, the Center asserted that Chairman Devine had discharged the plaintiff after consulting with Jackie Smizer and the plaintiff's immediate supervisor, Cathy Bijou. The Center reached back as far as 2002 to identify performance issues, including that sometimes the plaintiff left food remnants in his classroom, he did not always punch the clock when he arrived at the Center, and on more than one occasion he was seen by Bijou or the office manager viewing pornography on a Center computer. But the Center conceded that, as of his most-recent evaluation, the plaintiff's classroom performance had been "generally good to very good," and the accumulating list of problems with him had not justified his dismissal.

Instead, the Center maintained, he was fired because of the "Facebook posting" he "directed at" Jackie Smizer and Wolley. By "posting" the Center means the text of the e-mail Lynetta Hall sent to the plaintiff's nephew; the Center did not produce a screen shot of the post or any Facebook record of its existence. Neither did the Center submit evidence from Hall that what she wrote in her e-mail was from the plaintiff's Facebook page. The Center instead offered affidavits from Bijou, her daughter, and the office manager all saying that they personally had viewed the plaintiff's Facebook page and seen, in substance, the first sentence of the alleged post as reproduced in Hall's e-mail. The office manager elaborated that she had read the post on April 9 when she noticed that the plaintiff's Facebook page was open on a Center computer. The Center rounded out its presentation with a list of ten employees fired over the years—nine of them women, including Lynetta Hall—along with the assertion that no female employee ever had "posted derogatory messages on the internet" targeting the Center's management.

In a memorandum, the plaintiff responded by asserting that, in the year before he was fired, reductions in state funding that had subsidized the childcare expenses of many families with children at the Center had forced management to seek increased enrollment, and Jackie Smizer had told him that his gender was costing the Center money because four times prospective clients had declined to enroll their two-year-old daughters after realizing that the girls would be supervised by the plaintiff. Those parents had expressed discomfort with a male employee supervising children who were not yet toilet trained, and, according to the plaintiff, Jackie even had said that Chairman Devine called him a "liability."

Yet none of this made it into the plaintiff's response to the Center's statement of material facts, or into his own statement of material facts. *See* N.D. ILL L. R. 56.1. Instead, the plaintiff denied writing the alleged Facebook post, and he pointed out that the Center had not been able to produce anything more than Hall's e-mail to his nephew and affidavits from Bijou and the two other women who say they read a post similar to Hall's e-mail while looking at what they believed to be the plaintiff's Facebook page. The plaintiff also denied viewing pornography at the Center and asserted that four female employees had not been fired for misconduct akin to his asserted issue with keeping accurate attendance records.

The district court concluded that the plaintiff did not have direct evidence of sex discrimination, and that he lacked circumstantial evidence sufficient to survive summary judgment under either the direct or indirect methods of proof. As to both methods, the court reasoned, the plaintiff lacked proof that similarly situated female

employees had been treated more favorably because none of his proposed comparators had written offensive comments about coworkers on a social media site. The court also concluded that the plaintiff lacked evidence from which a jury could find that the Center's stated reason for terminating his employment—the alleged Facebook post—was pretextual. We review de novo the district court's decision and construe all facts and reasonable inferences in favor of the plaintiff. *See Phelan v. Cook County*, 463 F.3d 773, 778 (7th Cir. 2006).

On appeal the plaintiff repeats his assertion that a concern about lost revenue was the Center's real reason for firing him, and that his alleged Facebook post was cover for discrimination. The Center responds that its belief that he posted disparaging remarks about coworkers is undisputed, and that the post was a legitimate, nondiscriminatory reason for terminating his employment. The plaintiff's discrimination claim comes down to whether he submitted enough evidence to show that the Center's reason was pretext, and he did not. Although the outcome might well have been different if the plaintiff had introduced evidence to substantiate his accusation that Jackie Smizer and Chairman Devine had labeled him a liability because of his sex, he passed over the opportunity at summary judgment.

To show that the Center's reason was pretext, the plaintiff needed to demonstrate weaknesses, implausibilities, or inconsistencies in the Center's stated reason for firing him. *See Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012). Even if the Center's reason was not a good one, that is irrelevant if the Center honestly believed that the plaintiff wrote the post. *See id.* at 853. The plaintiff's opposition focused mostly on his denial that he wrote the alleged Facebook post, and he never submitted evidence showing that his mother or the chairmen did not honestly believe he wrote the text printed in the e-mail originating from Lynetta Hall. The plaintiff points out that the Center has been unable to produce an image of the Facebook post, that none of the witnesses who claim they saw it printed it, and that there are inconsistencies in the affidavits of the various witnesses who claim they saw the post. All of this might be significant if the Center's defense turned on its ability to prove that the alleged post actually was made or that the plaintiff made it, but it does not. The plaintiff does not dispute that Jackie Smizer received an e-mail from his nephew containing text that Jackie believed the plaintiff wrote on Facebook. Nor does he dispute that Jackie sent an e-mail to Chairman Devine describing the text, or that Jackie wrote a memo to Devine a few days before he was fired, again describing the text, and requesting that the plaintiff be dismissed. The plaintiff did not present sufficient evidence in his Local Rule 56.1 opposition to show that Jackie and Chairman Devine did not honestly believe that he wrote a disparaging post on Facebook, and thus summary judgment was properly granted for the Center.

**AFFIRMED**.